May I reserve two minutes of my time for rebuttal? We'll try to help you. Keep your eye on the clock, okay? Thank you, Your Honor. May it please the Court, the BIA's adverse credibility determination is not supported by substantial evidence, though I now agree with the government that the BIA specifically limited its decision to an adverse credibility determination based on three alleged omissions and two alleged inconsistencies, and therefore the scope of this Court's review is similarly limited to only those issues, and I will address each of these five items. Starting with the three alleged omissions, none of the three alleged omissions are in fact omissions at all. Using oral testimony to elaborate on an earlier assertion made in an affidavit does not constitute an omission. In fact, this is one of the reasons why we have oral testimony in immigration proceedings. The BIA says that Montoya testified that he was physically harmed by his classmates starting at age 7, but omitted that from his asylum affidavit, but that's not true. Montoya stated in his asylum affidavit at page 352, paragraphs 3 and 4, that he began suffering very harsh treatment from other children beginning at the age of 7. He then elaborated on and explained this assertion in his oral testimony. In fact, he wouldn't have given oral testimony about this at all, except that he was specifically asked at page 188 whether he recalled the first time that he was harmed physically because he was gay. His answer does not constitute an omission from his asylum affidavit. The second one is the BIA says that Montoya testified that he was physically and verbally abused by his father, but omitted that from his asylum affidavit. That's also not true. Montoya speaks in his affidavit at page 352, paragraph 6, and page 353, paragraph 11, how his parents made him suffer and traumatized him. Does he put DHS... Counsel, I appreciate your going through these matters. They are on the record, of course, and in your brief. I am most concerned, frankly, and would appreciate your help on what your client said when he was interviewed by the Border Patrol agent on July 20th, 2015. He was asked, what is your purpose for your entry into the United States? And he responded that he was, in quotes, going to live and work in Las Vegas, Nevada, and intended to stay approximately 10 years. Now, anything like that, that sounds like a very different kind of a plea than relying on these other issues, which admittedly are important. But does that not undermine some of the, shall I say, the thrust, the reason why he came? No, Your Honor, because that's not all that he said in that interview. On July 20th, 2015, Montoya told a Border Patrol officer at page 358 that his purpose for entry into the U.S. was to live and work in Las Vegas, but he also told him that he feared being persecuted or tortured if he were sent back to El Salvador. The Border Patrol officer did not ask him at that time why he feared being persecuted or tortured if he returned to El Salvador, so Montoya went no further. However, on August 19th, 2015— But, counsel, in the jurat, which he admittedly refused, but in the jurat, the question is, why did you leave your home country or country of last residence? And the answer is to work and live in Las Vegas, Nevada. And nothing added to that about because of the abuse I had suffered, because of my fears of retaliation or torture or worse, because of sexual orientation. It simply says to work and live in Las Vegas, Nevada. I don't understand why the BIA couldn't rely on that. Because the Border Patrol officer didn't ask him why. He didn't ask him why you're afraid to be persecuted or tortured if you return to El Salvador. Now, on August 19th, he was asked that question. He was asked, why are you afraid of being persecuted or tortured if you return to El Salvador? And he told the asylum officer that he was afraid to return to El Salvador because the gang would kill him on account of him being gay. This would read differently if the officer just followed up and asked him, okay, well, you say you're afraid of being persecuted or tortured. Why do you say that? But he didn't. Counsel, this is Judge Boggs. If you can maybe, from your experience, help me with the process here. As I understand it, he's caught on the morning of the 19th. This interview takes place on the 20th, so it's the next day. He's had a little time to shape up. And it seems it is recorded, but it seems to me a kind of a formulaic set of questions that are reasonable questions. He asks this question about purpose. And then he asks the question, if you're sent back, do you fear you will be persecuted? And I take it as soon as he says yes, that's what gets him sent off to Batavia for a month before they have the credible fear interview. I mean, I'm from Kentucky. This isn't my sort of image. I thought usually this was the credible fear interview. But as I take it, as soon as he gives that answer, that gets him in, and he doesn't need to elaborate. Is that a fair understanding of the process here? And also, once the Border Patrol officer gets that yes, there's no reason for the Border Patrol officer to continue with additional questions, and that gets him to his next file, which is probably what happened here. Okay, so we basically agree with that. But again, if you are, as his affidavit colorfully and accurately probably expresses, you're coming to live the American dream as a free gay person, you would think that would be the honest answer when you start out, as opposed to perhaps when you get that follow-up question, he says, oh, okay, this is where I better say yes. Well, I don't think so. I think that he was waiting for the officer to ask him, why? Why are you afraid of being persecuted, tortured, of your turn ill cellar? And the question doesn't come. The fact that he wanted to both avoid persecution and torture by coming to this country and work in Las Vegas doesn't make him a liar. And if the officer had asked him why he fears persecution or torture, if we turn to El Salvador, he would have gotten the same answer that the asylum officer got on August 19th, a month later. Even if that's plausible, counsel, why are we compelled to accept that explanation? Because we have to be compelled to accept it in order to rule in your client's favor, don't we? That's the standard. But I simply disagree with construing his answer on this initial interview as some sort of admission that he's not coming to the U.S. to avoid persecution. It's just three questions down on the same one-page piece of paper here. He says, I am afraid to be persecuted or tortured if I return to El Salvador. So it's both. He's saying both. And the fact that he doesn't just limit his response to one does not make him a liar. And I don't believe that it's reasonable to draw that conclusion. Well, let me ask you this. In terms of omission, possibly, he said that in his affidavit that he received insults from his family. He did not mention anything about abuse from his father, although later on he did. In terms of the gang extortion and so on, he mentioned gang violence, but not extortion. Now, these may be a small thing, but they are inconsistent, perhaps. He talks about detailed abuse by a family friend. The age of the family friend when it happened is inconsistent. The age when he realized he was gay, whether the Salvadoran government would protect him. Again, these just kind of add up, and it gets back to what Judge Bennett mentioned, which is, is there not substantial evidence to back up what the agency concluded? Admittedly, your client has a different perspective, has testified differently, but perhaps inconsistently and connected with a number of other issues. Well, I don't think that, first of all, the BIA decision is only limited to three alleged omissions and two alleged inconsistencies. And I don't believe that either of the inconsistencies which they assert are actually inconsistencies. Talking about the, going to the inconsistency about that he was inconsistent about what age he knew that he was gay. Well, he testified three times at the individual hearing that he knew at age seven that he preferred males. At page 193, 230, and page 188. He also says in his asylum affidavit at page 52 that he was seven years old when he began to feel an affection toward other boys. He did not testify that the first time he knew that he was gay was when he was 14. Instead, he testified at pages 180 and 181 that he formally came out to his parents when he was 14, but that they already knew that he had been gay since he was a little boy. And then he was specifically asked at page 181 whether at age 14 he could tell that he was not interested in girls but preferred boys. And he answered yes. And so he testified that he preferred boys at age seven and that he still preferred boys at age 14. That's not an inconsistency. The only consistency is we let you go over a fair amount of your time. We'll give you a little bit of rebuttal time. We're going to hear now from the government. I'm sorry. What do you think? Could I ask one question? Of course. Yeah. We sort of took you off the rails when you were attacking the omission about the beating and abuse by his family. And you were about to focus on something. And I wanted to ask that again because I didn't see that. That is, I see he says at one point I began to suffer. He says the family kicked me out of the house. But I didn't see anything in the affidavit about the family beating him. Did I miss something? Or how would you address that omission? He doesn't say specifically in the affidavit that he was beaten. But he does say at paragraph 6 and 11 that his parents made him suffer and traumatized him. 6 says I began to suffer because my family told me. Which I don't think gets you there. What's the second? All of my family offended and insulted me. And this began to traumatize me. Is that the two points that you have? Right. And so that put DHS on notice that his family inflicted suffering and trauma upon him. And then at the individual hearing, he expanded on that. All right. Good enough. Thank you. Very well. We'll give you a little extra time when we come back. Let's hear now from Ms. Burge. Hello, Your Honors. Kimberly Burge for the Attorney General. We believe that under the totality of the circumstances that these omissions and inconsistencies do support substantial evidence to support the adverse credibility decision in this case. The omissions from his affidavit, especially the not showing that he was physically harmed by his classmates or by his father in his affidavit, yet he testified to that before the court. I think those are significant omissions and not something that is trivial. Also, he doesn't say anything in his affidavit about the gang extorting him for money, much less extorting him for twice as much money as he had testified to before the court as well. In general, all of these omissions and inconsistencies kind of gel together to meet the totality of the circumstances test and provide substantial evidence which would support this adverse credibility decision in this case. What's your response to your friend's argument that the response to the question, because it's obviously not an untrue statement. That is one of the reasons. And he says a couple of questions later, do you fear or in the next question, do you fear? Would you be harmed? Yes. Why should we hold that against him as the BIA found when the first statement is true, but just not complete? Is that something that should be viewed as materially supporting an adverse credibility finding? I believe it does support the adverse credibility finding because he's directly asked the question, why did you leave your country of origin or that you would last pass through basically? And he has asked this question twice. He had two opportunities to divulge what was going on with him. And he did not do that twice. He did say that he feared going back to his country in that one question. But when asked the more detailed question, why do you not want to go back to your country? Then on those points and two different questions, he didn't go into any detail. So the government doesn't believe that that supports the adverse credibility determination. I gather that in effect, the government's relying on the non-exhaustive list of factors that the agency can consider under the Real ID Act into making a credibility finding. I'm referring specifically to 8 U.S.C. 1158B1B3 to lie. So that long list of things that we can consider. Is that correct? That's correct. Counsel, I thought I heard you say just before the last question that they asked him, why do you fear? And he didn't say something. Are we talking about a different part? Because in the interview for the sworn statement on the 20th, they don't ask him anything after, do you fear? Were you talking about a different proceeding or do I not read the record right? I think I was referring to the actual border patrol interview where he was asked, if you're sent back to your country, do you fear that you'll be persecuted or tortured? And that's in the administrative record on page 358. Then I heard you go on to say, and they did ask him why, did I just mishear you? Because they don't ask him anything. I think so. I don't think that that's where I was going with that. I think I was, I don't recall saying that. I'm sorry, your honor. All right. That's fine. As long as we're talking about the same piece of record. That's fine. Go ahead. Do you have additional arguments? I actually think it's. Go ahead. No, I think actually if there are no further questions, the government will rest. Do either of my colleagues have additional questions for the government? Hearing none then, Mr. Snavely, we'll give you a minute and a half to rebut. Your honor, there's one omission that I didn't get to address and that's this extortion. Alleged omission. BIS says that Montoya testified that he was extorted by gang members because he was gay. That's wrong. He did not testify to that. What he testified to at pages 204 through 206 is that he and all the other business owners had to pay rent to the gang, but that he had to pay more rent to the gang than the being gay. He says in his affidavit at page 353 paragraph 10 that he was discriminated against because he was homosexual. Now, on to the. Can I ask you this? As you know, we have lots of cases involving discrimination and of course to discriminate against someone because of their sexual orientation is certainly illegal, certainly in the United States and in other countries as well. Does that constitute torture? No, it does not. Your honor. The only reason I mention it is because the BIA used this to say that this was an omission from his affidavit. Montoya is not making a claim that this discrimination against him by the gang constitutes a persecution which leads me to a larger point is that Montoya's asylum claim here is that he suffered past persecution at age 26 because the gang beat him and threatened to kill him on account of him being gay and that he has a well-founded fear of persecution for the same reasons. These omissions and inconsistencies do not pertain to the events that form the basis of his asylum claim. They're trivialities and they aren't actually omissions or inconsistencies at all. To base an adverse credibility determination upon them is patently unreasonable and so there's not substantial evidence to support the BIA's adverse credibility determination and I respectfully request that you grant the petition for judicial review. Okay. Let me ask, do either of my colleagues have additional questions for Mr. Snavely? No. All right. Thank you both for your argument. We appreciate it. The case of Montoya Garcia v. Barr is hereby submitted.
judges: Boggs, M. Smith, Bennett